[Crim. No. 12664. In Bank. Jan. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD MICAJAH PEARSON, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

MOSK, J.—This cause was transferred to this court after

decision by the Court of Appeal, Second Appellate District, Division One. Upon a full examination of the record, we have concluded that the opinion of the Court of Appeal prepared by Mr. Justice Fourt (*People* v. *Pearson* (Cal.App.) 69 Cal. Rptr. 756) correctly disposes of the matter and it is therefore adopted as and for the opinion of this court, with the exception of one paragraph and some extraneous descriptive material which we have deleted.* The opinion follows:

This is an appeal from a judgment of conviction of rape (§ 261, subd. 4, Pen. Code) and of a violation of section 288a, Penal Code.

In an information filed in Los Angeles on October 11, 1966, defendant was charged in count I with raping Elena [] on September 7, 1966, and it was charged that defendant prevented the victim from resisting by threats of great immediate bodily harm accompanied by the apparent power of execution and force and violence; in count II it was charged that defendant feloniously and by means of violence, duress, menace and threat of great bodily harm compelled Elena [] to "participate in the act of copulating the sexual organ," of defendant "with the mouth of ELENA []" on or about September 7, 1966. Defendant pleaded not guilty. In a jury trial defendant was found guilty as charged and was thereafter sentenced to the state prison for the term prescribed by law on each count, the sentences to run concurrently with each other. Defendant filed a timely notice of appeal and a purported notice of appeal from the order denying a motion for a new trial.

A resume of some of the facts is as follows: On September 6, 1966, Elena [ ] went to a house in the 2200 block on Lime Street in Long Beach to visit with Dianne [], who was not married to defendant [] but was living with him. Defendant invited Elena into his house and explained that Dianne had gone to San Francisco. []. They talked for some time, listened to some music, went out to get some whiskey and consumed a drink or so. [Elena] decided to leave the house but was urged to stay by defendant. Later when she started to leave, defendant pushed her toward the nearby bedroom where (without relating the abhorrent details but according generally to the testimony) defendant pulled off Elena's clothes and then compelled her by force and violence to commit the act charged

---

*Brackets together, in this manner [] without enclosing material, are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are used to denote insertions or additions by this court.

in count II. He bit her on the thighs and legs several times and orally copulated. Defendant later compelled Elena by threats, force and violence to have an act of sexual intercourse with him. When it appeared later that defendant was asleep, Elena partially dressed, escaped from the house, drove her car to the home of some nearby friends, a Mr. and Mrs. Corey. When she arrived at the latter home she was sobbing, disheveled and her blouse and skirt were ripped. She was wearing no bra, hose, or shoes. When she was permitted to enter the Corey house at about 5 :40 a.m. she kept crying and said, "He hurt me, he was going to kill me," and when asked by Mrs. Corey, "Who?" Elena answered, "Don Pearson." Elena asked that the police not be called because she was afraid defendant would kill her. Elena had a blood blister on her eye, a large bloody spot on the crown of her head, where a substantial amount of her hair had been pulled out by defendant.

At about 9 :30 a.m. Elena went to the City College and then to the office of a gynecologist for a venereal disease test. The doctor observed a bruised area on her left upper eyelid of recent origin, large bruised areas on the inside of both thighs of recent origin. Elena complained of extreme soreness of the scalp, increased vaginal discharge and soreness of the vagina. She was trembling, and appeared pale, upset and frightened. The pelvic examination indicated to the doctor that she had resisted the act of intercourse. Several smears and cultures were analyzed and indicated the presence of numerous spermatozoa and no gonococci. The presence of the sperm indicated that the intercourse was accomplished within 24 hours of the examination. Elena stated to the doctor that she had been raped, and based on her statement and her physical condition the doctor wrote "forcible rape" on her chart.

Appellant testified that he was recently released from a federal prison having been committed on a felony conviction and that he was [employed] in Long Beach [ ], that he had not committed any of the acts on Elena as charged in the information.

Appellant now asserts that the testimony of Elena was inherently improbable and the evidence was insufficient to support the judgment, that the reading of a police report at the trial by a police officer in connection with the officer's testimony of appellant's prior denial of Elena's accusatory statements therein, were inadmissible hearsay and prejudicial to appellant, and raises certain other additional points not concurred in by his counsel.

We find nothing improbable about the testimony of the victim in this case. Her testimony with reference to the force used was corroborated by Mr. and Mrs. Corey, and the doctor. In *People* v. *Perez,* 65 Cal.2d 709 at pages 713-714 [56 Cal. Rptr. 312, 423 P.2d 240], it is said: "In urging that Mrs. Holder's testimony is inherently improbable, defendant points to evidence such as her testimony that she never saw the knife, did not attempt to escape, and did not complain to the police until the third time defendant came to her home. However, these matters do not show that her testimony is inherently improbable. The applicable rule has been thus stated, ' "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" ' (*People* v. *Lyons,* 47 Cal.2d 311, 319-320 [303 P.2d 329]; *People* v. *White,* 43 Cal.2d 740, 747-748 [278 P.2d 9].) "*People* v. *Carvalho,* 112 Cal.App.2d 482 [246 P.2d 950], relied upon by defendant, is unlike the instant case. There a jury found the defendant guilty of kidnaping his estranged wife, and on appeal the court concluded that the testimony of the prosecutrix was 'fantastic' and the circumstances testified to by her were more than unusual. It appeared, among other things, that the prosecutrix had abundant opportunity to escape and to inform others of her claimed predicament but made no effort to do so, that on the occasion of the asserted kidnaping she and the defendant began 'making love' and had sexual intercourse, that she did not discuss the alleged crime with the police until a month later, and that on one occasion after the asserted crime the defendant came to her house for dinner."

[] [1]

---

[1][We here delete a paragraph of the Court of Appeal opinion. Purporting to act "pursuant to the Rules of Court," the Court of Appeal "called for and perused the original file in this case." The opinion then quoted and summarized certain portions of the probation report and of

■ Officer Piper read a part of a police report in connection with his testimony of appellant's prior denial of the victim's accusatory statements. No objection to the testimony was made at the time of trial. Appellant cannot make the objection for the first time on appeal. (*People* v. *Bonman,* 201 Cal.App. 2d 248, 253-254 [20 Cal.Rptr. 238]; *People* v. *Caruth,* 237 Cal.App.2d 401, 403-404 [47 Cal.Rptr. 29].) In any event under the circumstances of this case there was no prejudice to appellant. (*People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243]; Cal. Const., art. VI, § 13.)

Appellant's individual contentions as distinguished from those presented by his competent and diligent counsel have been considered thoroughly and we find no merit to any of such contentions.

The purported appeal from the order denying the motion for a new trial is dismissed.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

defendant's written statement to the trial court prior to sentencing, apparently for the purpose of suggesting that defendant was the sort of person who would be likely to commit the particular crimes charged. This is an abuse of appellate prerogatives. The matters thus considered by the Court of Appeal were not before the trier of fact, some because they were inadmissible hearsay and the remainder because they had not yet been uttered when the verdict was returned. Accordingly, they may not be considered by an appellate court in reviewing the judgment. Contrary to the assertion of the Court of Appeal, there are no rules of court which sanction this procedure. Such material is not part of either the "normal" or the "additional" record on appeal (Cal. Rules of Court, rule 33); and although the reviewing court is authorized to augment that record, the authority extends only to material "offered at or used on the trial or hearing below. . . ." (Rule 12(a); see, e.g., *People* v. *Wein* (1958) 50 Cal.2d 383, 411 [326 P.2d 457].)]